## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF RHODE ISLAND

---

In re:  Marcus Charles Bernard Soori-Arachi           BK No. 17-10570
      and Stephanie Tamgho,                            Chapter 7
      Debtors

---

### <u>DECISION ON OBJECTION TO EXEMPTION</u>

This matter is before the Court on the objection of the Chapter 7 Trustee ("Trustee") to

Debtor Marcus Soori-Arachi's ("Mr. Soori") second amended claim of exemption of a

UTMA/UGMA account with Fidelity Investment Life Insurance under certain state exemption

statutes. The account consists of a nonqualified, tax deferred annuity with a surrender value of

$105,000. Mr. Soori opposed the Trustee's objection, and on January 23, 2019, the Court held a

final hearing and took this contested matter under advisement. In reaching its determination, the

Court has carefully considered the parties' relevant filings and respective arguments, their agreed

statement of undisputed facts and attached exhibits, the various state exemption statutes in issue,

and applicable case law. The Court concludes that the Fidelity account and the annuity it

contains are not exempt from the bankruptcy estate under the Rhode Island statutes upon which

Mr. Soori relies. He may, however, exempt $6,400 of the annuity's liquidated proceeds under

R.I. Gen. Laws § 9-26-4(16), the state catch-all exemption.[1]

### I.    Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334 and DRI LR

Gen 109(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

---

[1] The Trustee does not dispute Mr. Soori's entitlement to this exemption in this limited amount.

## II.    Relevant Procedural Background

Despite the Court's urgings to the contrary, and except for a brief period, Mr. Soori has

represented himself. Getting to the point where this matter is ripe for final determination has

followed a long, winding, and bumpy road. Along the way the parties have amended and refined

their respective arguments. For brevity's sake, the Court will avoid discussing all the twists and

turns and limit the background information to what is particularly germane to its decision.

Mr. Soori and his wife Stephanie Tamgho filed their joint voluntary petition under

chapter 7 of the Bankruptcy Code[2] on April 10, 2017 ("Filing Date"). About a month later the

Debtors amended their bankruptcy schedules ("Amended Schedules," Doc. #21). On Amended

Schedule A/B: Property, under the category of "deposits of money," the Debtors listed a

"Fidelity Trust/UTMA Account[]: 323026826" ("Fidelity Account"). On Amended Schedule C:

Property Exempt, they claimed an exemption in the Fidelity Account for an "unknown amount."

The Debtors also indicated that there may be other accounts at various financial institutions that

were established for Mr. Soori's benefit when he was a minor, but they provided no specific

information about these possible accounts.

In accordance with her duties, the Trustee contacted various financial institutions to

locate other potential accounts and obtain information about the Fidelity Account. In due course,

the Trustee learned that the Fidelity Account actually contained a nonqualified, tax deferred

variable annuity ("Annuity"). On June 6, 2018, with the assistance of counsel at the time, the

Debtors filed their second amended bankruptcy schedules ("Second Amended Schedules," Doc.

#63).  On Second Amended Schedule A/B, the Debtors accurately list the Fidelity Account as

---

[2] Unless otherwise indicated, the terms "Bankruptcy Code," "chapter," "section," and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub L. No. 109-8, 119 Stat. 37 ("BAPCPA").

consisting of the Annuity. On Second Amended Schedule C, the Debtors elect state and federal

non-bankruptcy exemptions under 11 U.S.C. § 522(b)(3) and claim the full amount of the

Fidelity Account and the Annuity proceeds as exempt under R.I. Gen. Laws[3] §§ 27-4-11—*Rights*

*of Beneficiaries to Proceeds of Policy As Against Creditors*, 27-4-12—*Provision for Exemptions*

*From Encumbrance, Transfer, or Claims of Creditors*, 27-18-24—*Immunity of Benefits From*

*Process*, and 9-26-4(16)—*Property Exempt From Attachment* (the limited catch-all provision).

On June 26, 2018, the Trustee objected to Mr. Soori's exemption of the Fidelity Account

under these cited Rhode Island statutory exemptions ("Objection," Doc. #65).[4]

## III.    Findings of Fact

The facts relevant to the analysis of this matter are not in dispute. The Court makes the

following findings of fact based on the Agreed Statement of Facts, Disputed Facts and

Supporting Documents ("Agreed Statement," Doc. #108) submitted by the parties, the exhibits

attached to the Agreed Statement, which include the application for the purchase of the annuity

and the annuity contract, and other exhibits attached to the parties' various filings.[5]

Mr. Soori was born on March 15, 1983. In Omaha, Nebraska, on April 1, 1998, Mr.

Soori's father, Gamini S. Sooriyaarachchi, completed and submitted an application to purchase a

"Variable and Fixed Annuity Issued and Administered by Fidelity Investment" for Mr. Soori's

---

[3] Unless otherwise indicated, hereafter "RIGL" refers to R.I. Gen. Laws, 1956.

[4] As previously indicated, the Trustee's Objection to the exemption of the Fidelity Account under RIGL § 9-26-4(16)'s catch-all exemption is limited to the extent that the amount claimed as exempt exceeds $6,400, as the statutory limit is $6,500 and Mr. Soori used $100 of that amount to exempt cash on hand.

[5] The parties' Agreed Statement lists only one disputed fact: whether Mr. Soori had access to and control over the Fidelity Account, because the insurance company would not respond to him or his requests to liquidate the Annuity. At the January 23rd hearing, the Court asked Mr. Soori if he wanted an evidentiary hearing to resolve this disputed fact prior to the Court's determination of the exemption issue. He unequivocally declined, stating that the resolution of this one factual issue was not necessary and the Court should determine that he is entitled to the exemption based on the undisputed facts and the law he relies on. The Court agrees with Mr. Soori that the listed disputed fact does not factor into the exemption analysis.

benefit ("Application," Doc. #108, Exhibit A). On April 6, 1998, Mr. Soori's father opened the

UGMA/UTMA Fidelity Account with Fidelity Investment Life Insurance ("Fidelity"), in the

name of "Gamini S. Sooriyaarachchi as custodian for Marcus C.B. Soori-arachi," account

number 323026826. That same day he purchased the non-qualified deferred variable Annuity for

$10,040.77, which is held in the Fidelity Account. The terms of the Annuity are governed by the

deferred annuity contract issued by Fidelity also on April 6, 1998 ("Annuity Contract," Doc.

#108, Exhibit B).[6] Under the Annuity Contract, the maturity date of the Annuity is April 1, 2068.

On that date, the designated annuitant may make an election of payment distributions if the

Annuity Contract has not previously been liquidated. The Application and the Annuity Contract

designate Mr. Soori as the annuitant ("Annuitant"). As the Annuitant, Mr. Soori had the right to

access the Fidelity Account and liquidate the Annuity for its surrender value when he turned 19

on March 15, 2002. Notwithstanding, the Annuity remains in full force and effect and no funds

have been withdrawn from the Fidelity Account since its inception.

      The Annuity Contract includes a death benefit payable to the designated beneficiary of

the Annuity. The beneficiary receives the funds upon the death of the Annuity owner and

Annuitant named on the Application. The Application and Annuity Contract identify Mr. Soori

as the Annuity owner ("Owner") and his probate estate as the primary beneficiary

("Beneficiary") entitled to receive the Annuity proceeds upon his death. These designations have

never been changed since the issuance of the Annuity Contract and the Annuity.[7]

---

[6] Although the Annuity Contract provided by the parties is dated March 29, 2018, the parties' Agreed Statement clarifies that this date is not the date of the document, but rather the date Fidelity provided a copy of it to Mr. Soori.

[7] Three additions to the Annuity Contract terms were added in the form of endorsements but they are not relevant to the issues presently before the Court. These endorsements include: (i) a Death Benefit Accumulation Period document, (ii) a Table of Surrender Charges, and (iii) a Change of Address.

On October 17, 2017, the Trustee notified Fidelity of Mr. Soori's bankruptcy filing and requested that the ownership of the Fidelity Account be updated to reflect that Mr. Soori was no longer a minor. Based on this information, Fidelity amended the owner of the Fidelity Account from "Gamini S. Sooriyaarachchi as custodian for" Marcus Soori to simply Marcus Soori. This change was effective on October 30, 2017, and Mr. Soori, individually, was the designated Owner and Annuitant of the Annuity.[8]

In summary, Mr. Soori is the Annuity Owner and Annuitant, and his probate estate is the designated Beneficiary of the Annuity and entitled to its proceeds upon Mr. Soori's death.

## IV.    Positions of the Parties[9]

### A.  Exemption Under RIGL § 27-4-11

The Trustee objects to the exemption of the Fidelity Account under RIGL § 27-4-11, contending that it only applies to life insurance policies and is limited to protecting life insurance proceeds from the claims of the insured's creditors. (Doc. ## 65, 114). In support, the Trustee refers to the separate definitions of "annuities" and "life insurance" in RIGL § 27-4-0.1(a) and (c). She also cites the Rhode Island Superior Court case of *Rhode Island Hospital Trust National Bank v. Silverman,* in which that court applied RIGL § 27-4-11 to prevent an insured's creditors

---

[8] The Court finds that the parties erroneously referred to the date of October 30, 2019, in paragraph 22 of the Agreed Statement. It is clear from the related agreed facts and the parties' arguments that they intended to stipulate to the date of October 30, 2017.

[9] In light of this proceeding's twists and turns, which include Mr. Soori's numerous filings in the form of letters addressed to the Court, this summary of the parties' respective positions has been culled from the following filings: Trustee's Objection to Exemption of Fidelity Account (Doc. #65); Debtor's Response to Trustee's Objection ("Response," Doc. #66); Debtor's Supplemental Response to Trustee's Objection (Doc. #73); Trustee's Supplemental Response/Objection (Doc. #114); and Debtor's Motion to Compel Trustee to Subpoena Custodian for Accounting (Doc. #120). At some point in the proceeding, Mr. Soori indicated that he did not want the Court to consider arguments made in the Response filed by his former counsel because he did not think they presented the best arguments in support of his exemption claims. *See* Doc. #90, ¶ 6. Mindful of Mr. Soori's pro se status, the Court has considered the arguments in the Response, but to the extent such arguments conflict with those subsequently made by Mr. Soori, the Court will treat them as withdrawn. At any rate, neither set of arguments prevails.

from attaching the life insurance policy's unexercised cash surrender value. No. C.A. PC 1994-1182, 2002 WL 220786, at *1 (R.I. Super. Feb. 5, 2002).

In opposition, Mr. Soori maintains that RIGL § 27-4-11 applies to *any type* of insurance product. (Doc. #66). He initially argued that the Annuity was a life insurance policy covered by the statute because it contained a death benefit, but now asserts that the Annuity is exempt because it is a type of insurance and falls within the ambit of the statute. To bolster his argument, he relies on the first five words of the statute: "[i]f a policy of insurance . . . ," the use of the term "insurer" in the definition of annuities in RIGL § 27-4-0.1(a), as well as regulations of the Rhode Island Department of Business Regulation and information on the agency's website, which includes a discussion about annuities.[10] Mr. Soori also argues that RIGL § 27-4-11 protects the Fidelity Account from the claims of his creditors because the Trustee's allegedly improper post-petition actions changed his status as a "beneficiary" under the Annuity Contract to that of an owner and "insured" as referenced in RIGL § 27-4-11.

B.  Exemption Under RIGL § 27-18-24

Next, the Trustee objects to Mr. Soori's exemption of the Fidelity Account under RIGL § 27-18-24, arguing that the statute is inapplicable because the Annuity Contract is not a "policy of accident and sickness."[11] (Doc. ## 65, 114). She points out that the Annuity Contract does not reference loss or death of any person due to illness or accident.

---

[10] Specifically, Mr. Soori cites the "State of Rhode Island and Providence Plantations Department of Business Regulation's Insurance Regulations" definition of annuity. Additionally, he points to that department's "Buyer's Guide for Deferred Annuities" and its explanation that "[a]n annuity is a contract with an insurance company." (Doc. #73).

[11] RIGL § 27-18-24 bars the use of "proceeds, avails, and benefits to be paid by virtue of any policy of accident and sickness insurance . . . to pay any debt or liability of the [policy] owner, insured, beneficiary, or any person who may have any right under the policy[,]" provided certain conditions are met. RIGL § 27-18-24. The Rhode Island legislature construes the phrase "policy of accident and sickness insurance" to "include[] any policy or contract covering against loss resulting from sickness or from bodily injury or death by accident, or both." RIGL § 27-18-1.

It appears Mr. Soori has conceded this point. *See* Doc. ## 66, 73, 120. While he references RIGL § 27-18-24 in rejecting the Trustee's argument that an annuity is not an insurance policy, he does not address the statute in any further detail. Little discussion of this exemption claim is required by the Court. It is abundantly clear that the statute does not apply because the Annuity Contract is not an insurance policy covering loss resulting from "accident or sickness."

### C.  Exemption Under RIGL § 27-4-12

The Trustee's final argument is that RIGL § 27-4-12 does not protect the Annuity proceeds and surrender value from the claims of Mr. Soori's creditors because he is and has always been the Owner of the Annuity under the Annuity Contract, and the statute only protects the proceeds from the claims of the named Beneficiary's creditors. She also maintains that informing Fidelity of Mr. Soori's attainment of the age of majority did not result in an improper change of ownership, nor did it impact his alleged "beneficiary status" under Nebraska's UTMA or the Annuity Contract.

 Mr. Soori counters that the Fidelity Account is fully exempt under this statute because he was the UTMA/UGMA beneficiary of the Fidelity Account on the Filing Date. Citing Nebraska's Uniform Transfers to Minors Act codified in Neb. Rev. St. §§ 43-2701 to 43-2724 ("Nebraska's UTMA"), he argues that this statute controls his designation as the beneficiary of the Fidelity Account and "supersedes any definition of 'beneficiary' in the [A]nnuity [C]ontract." (Doc. ## 73, 120). The Trustee's post-petition actions resulting in the reissuance of the Annuity Contract in his name, he asserts, did not comply with Nebraska's UTMA. Thus, he

---

*See also* RIGL § 27-18-19(4) (listing types of insurance exempt from the scope of section 18, including annuity contracts containing only certain provisions relating to accident and sickness insurance).

posits that he was and remains the beneficiary of the Fidelity Account and the account is exempt under RIGL § 27-4-12.

## V.     Applicable Bankruptcy Law

### A.   Property of the Estate

As with any bankruptcy exemption determination, the starting point is Bankruptcy Code § 541. "The moment a bankruptcy petition is filed, the debtor's bankruptcy estate is created." *In re Seeling*, 471 B.R. 320, 322 (Bankr. D. Mass. 2012). The bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case" regardless of any restrictions or conditions on the debtor's interest, unless the so-called spendthrift trust provisions of § 541(c)(2) apply. 11 U.S.C. § 541(a)(1); *see In re Olson*, 424 B.R. 770, 772 (Bankr. E.D. Mich. 2010) ("Section 541 is intended to be very broad."). Under § 541(c)(2), "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under" the Code. *See also In re Quakenbush*, 339 B.R. 845, 848-49 (Bankr. S.D.N.Y. 2006) (noting § 541(c)(2)'s relevancy to spendthrift trusts or similar trusts under nonbankruptcy law). Property rights and interests in bankruptcy are created and defined by state law. *See Youngblut v. Pepmeyer (In re Pepmeyer)*, 275 B.R. 539, 543 (Bankr. N.D. Iowa 2002) (noting that "'property' is not defined in the Bankruptcy Code and is, therefore, subject to definition under state law") (citing *Nobelman v. American Sav. Bank*, 508 U.S. 324, 329 (1993)).

Despite an anti-alienation clause, an annuity may still become property of the bankruptcy estate if it does not qualify as a trust under applicable nonbankruptcy law. Under Nebraska law, the mere inclusion of such an anti-alienation provision in an annuity contract does not alone bring it within the scope of § 541(c)(2). *Novak v. Drake (In re Drake)*, No. 07-21678 (ASD),

2012 WL 1095501, at *7 (Bankr. D. Conn. Mar. 29, 2012) (holding debtor's structured

settlement annuity with an anti-alienation provision was not a "spendthrift trust" under Nebraska

law). *See also Quackenbush*, 339 B.R. at 854-55 (concluding New York UGMA account was

property of the bankruptcy estate and not exempt as a trust under § 541(c)(2) where debtor

reached age of majority pre-petition).

  B. Exemption of Bankruptcy Estate Assets

  Notwithstanding § 541(a), a debtor may exempt certain property from the bankruptcy

estate under § 522. The purpose of this section is to "ensure that the individual does not emerge

from bankruptcy destitute, and . . . has the basic necessities" to obtain a fresh start. *Olson*, 424

B.R. at 773-74. A debtor's available exemptions under § 522 are determined upon the filing of

the petition. *In re Valentine*, No. 08-12074-JMD, 2009 WL 3336081, at *4 (Bankr. D.N.H. Oct.

14, 2009). In Rhode Island, debtors may claim either state or federal exemptions. *See* 11 U.S.C.

§ 522(b); *In re Barbera*, 285 B.R. 355, 355 (Bankr. D.R.I. 2002) (noting that "Rhode Island has

not opted out" of the federal exemption scheme). Debtors "bear the burden of listing and

claiming their exemptions." *Valentine,* 2009 WL 3336081, at *6 (citing Fed. R. Bankr. P.

4003(a)). Properly claimed exemptions are presumptively valid absent an objection. *See* 11

U.S.C. § 522(l). "Therefore, as the objecting party, it is the Trustee's burden to prove otherwise."

*Seeling*, 471 B.R. at 322 (citing Fed. R. Bankr.P. 4003(c)); s*ee, e.g., In re Andrade*, No. 10-

10444, 2011 WL 1559241, at *1 (Bankr. D.R.I. Mar. 16, 2011); *In re Vargas*, No. BK 10-13103,

2011 WL 4482005, at *1 (Bankr. D.R.I. Sept. 27, 2011).

**VI. Analysis of Mr. Soori's Exemption Claims**

  There is little to no Rhode Island case law analyzing and applying Mr. Soori's claimed

exemptions under these state exemption statutes. Thus, Rhode Island's rules of statutory

construction and other courts' application of similar exemption statutes will guide this Court's

analysis. *See In re Goldman*, 70 F.3d 1028, 1029 (9th Cir. 1995) (federal courts must follow a

state's rules of statutory construction when construing its homestead exemptions).

Rhode Island's overarching principal of statutory construction is:

> "establishing and effectuating the intent of the Legislature . . . .
> [which is] accomplished [by examining] the language, nature, and
> object of the statute . . . . [and giving] to the words in a statute their
> plain and ordinary meaning, unless a contrary interpretation is
> apparent." *Howard Union of Teachers v. State*, 478 A.2d 563, 565
> (R.I. 1984) (citations omitted) . . . "[I]t is axiomatic that 'this Court
> will not broaden statutory provisions by judicial interpretation
> unless such interpretation is necessary and appropriate in carrying
> out the clear intent or defining the terms of the statute.'" [*State v.
> Santos*, 870 A.2d 1029, 1032 (R.I. 2005).]

*In re Carpenter*, 559 B.R. 551, 557 (Bankr. D.R.I. 2016). *See also Western Reserve Life Assur.*

*Co. of Ohio v. ADM Associates, LLC*, 116 A.3d 794, 798 (R.I. 2015); *Miller v. Saunders*, 80

A.3d 44, 50 (R.I. 2013) (applying ordinary meaning to Rhode Island's Uniform Custodial Trust

Act's unambiguous use of phrase "in substance"); *Silverman*, 2002 WL 220786, at *1 (finding

plain meaning of RIGL § 27-4-11 clearly demonstrates legislature's intent).

A.  <u>RIGL § 27-4-11: Rights of Beneficiaries to Proceeds of Policy As Against Creditors</u>

RIGL § 27-4-11 provides in relevant part:

> If a policy of insurance is effected by any person on that person's
> own life or on another life in favor of a person other than himself or
> herself, . . .  the lawful beneficiary or assignee of the policy, other
> than the insured or the person effecting that insurance . . . , shall be
> entitled to its proceeds and avails against the creditors and
> representatives of the insured and of the person effecting the
> insurance, whether or not the right to change the beneficiary is
> reserved or permitted . . . .

The statute protects the rights of an insured's beneficiary to the proceeds of an

unexercised surrender value of a *life insurance policy* from the claims of the insured's creditors.

*Silverman*, 2002 WL 220786, at *1, 3 (holding RIGL § 27-4-11 exempts the "proceeds and

avails" in favor of wife beneficiary of insured husband's life insurance policy against husband's

creditors); *Murino v. Reynolds*, 550 A.2d 1058, 1058 (R.I. 1988) (stating RIGL § 27-4-11

"specifically provides that the proceeds of a life insurance policy shall be paid to the 'lawful

beneficiary'"). Its plain meaning evinces the General Assembly's intent to safeguard the rights

and interests of an insured's beneficiary from the insured's creditors "by exempting [life

insurance policies] from their reach." *Silverman*, 2002 WL 220786, at *2-3 (citing reasoning in

*Murphy v. Casey*, 184 N.W. 783, 784 (Minn. 1921) (rejecting argument that cash surrender value

was subject to claims of insured's creditors where outcome would "wholly destroy the intent of

the statute and deprive beneficiaries . . . of the protection the [Minnesota] Legislature intended to

secure to them" )). *See generally In re May*, 478 B.R. 431, 436 (Bankr. D. Colo. 2012)

(explaining that states enacted "[exemption] statutes to protect life insurance proceeds . . . [by]

exempting proceeds from the claims of creditors of the purchaser of the insurance (usually the

insured) . . . [and] safeguarding proceeds against claims of creditors of the beneficiaries").

    The key to applying RIGL § 27-4-11 is that the instrument under which such proceeds

are payable must be a life insurance policy. The Annuity Contract before the Court is not a life

insurance policy; *ipso facto* RIGL § 27-4-11 does not entitle Mr. Soori to exempt the Fidelity

Account or the Annuity from his bankruptcy estate. Mr. Soori's argument that RIGL § 27-4-11

applies to any type of insurance, including annuities, is predicated upon on an overly broad

reading of the statute's first five words—"[i]f a policy of insurance"—and his belief that

annuities are insurance products. As discussed below, the Rhode Island Supreme Court, although

not interpreting this precise statute, refused to construe a Rhode Island statute's use of the words

"any insurance contract" to include a variable annuity with a death benefit. *See Western*, 116

A.3d at 801 (holding that Rhode Island's insurable interest requirement only applies to life

insurance because "any insurance contract *upon the life or body of another individual*" is synonymous with life insurance) (emphasis added).

RIGL § 27-4-11's exclusive application to life insurance policies is evidenced by qualifying words that Mr. Soori disregards. These critical words specifically refer to an insurance policy that *"is effected by any person on that person's own life or on another life in favor of a person other than himself or herself."* RIGL § 27-4-11 (emphasis added). This qualifying language reflects the legislature's goal of protecting a beneficiary's right to the proceeds and unexercised surrender value of a life insurance policy. *Silverman*, 2002 WL 220786, at *1.

Mr. Soori incorrectly assumes that annuities and life insurance (or other types of insurance) are treated similarly under Rhode Island law or are structural equivalents. A state's "[t]reatment of annuities . . . is contextual." *See NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 261 (1995). "States generally classify annuities as insurance when defining the powers of insurance companies and state insurance regulators . . . . [but] have resisted [the] lump classification of annuities as insurance." *Id.*

Rhode Island law describes annuities as:

> all agreements to make periodic payments for a certain period or where the making or continuance of all or some of a series of the payments, or the amount of any payment, depends on the continuance of human life, *except payments made in connection with a life insurance policy. . . .*

RIGL § 27-4-0.1(a) (emphasis added). Significantly, this definition expressly excludes "payments made in connection with a life insurance policy," demonstrating the General Assembly's intent to treat annuities as separate and functionally distinct agreements. This is further underscored by the definition of life insurance provided in RIGL § 27-4-0.1(c), which

defines life insurance as "every insurance upon the lives of human beings and every insurance

appertaining to that life" and omits any reference to annuities.

The Annuity's death benefit does not alter its structural distinction from life insurance or

its treatment under this exemption statute. In *Western Reserve Life Assurance Company of Ohio*

*v. ADM Associates, LLC*, the Rhode Island Supreme Court regarded "an annuity policy with an

elective death benefit to be separate and distinct from a life insurance policy." 116 A.3d at 799.

Addressing the application of RIGL § 27-4-27(a)'s insurable interest requirement,[12] it reasoned

that "if the General Assembly intended the insurable interest requirement . . . to apply to annuity

policies as well as to life insurance policies, then the Legislature would have expressly so

indicated within the language of the section." *Id.* at 801 (citing statutes that expressly refer to

both life insurance and/or annuities and apply to both, including RIGL §§ 27-4-12, 27-4-24 and

27-4-26).

The General Assembly's treatment of annuities as facially and functionally distinct from

life insurance policies is apparent when comparing Mr. Soori's Annuity to a typical life

insurance policy. A life insurance policy provides "a guaranteed, set sum . . . . to a beneficiary or

beneficiaries *only* upon the death of the insured." *Id.* at 800 (emphasis in original). In contrast,

Mr. Soori's Annuity is akin to an investment vehicle, providing for both the liquidation of the

Annuity to obtain the accumulated increase in value over time (with the risk of loss of value) and

periodic payments during his life payable on the date stated in the Annuity Contract. *Id.* at 800;

*May*, 478 B.R. at 433-34 (describing modern variable annuities as investment vehicles) (citing

---

[12] This section provides: "No person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under the contract are payable to the individual insured or his or her personal representatives, or to a person having, at the time when the contract was made, an insurable interest in the individual insured." RIGL § 27-4-27(a).

*SEC v. Variable Annuity Life Ins. Co. of America*, 359 U.S. 65, 70-71 (1959) (describing the advent of variable annuities)); *Bryan v. Stanton (In re Bryan)*, 466 B.R. 460, 467-68 (B.A.P. 8th Cir. 2012) (noting that "whereas a life insurance contract is normally funded in regular intervals and payable at death, the Annuity was funded only at its inception and is payable at a pre-determined date"). Mr. Soori's Annuity falls within the General Assembly's definition of annuities under RIGL § 27-4-0.1(a) and is outside the scope of RIGL § 27-4-11.

B.   RIGL § 27-4-12: Exemption from Encumbrance, Transfer, or Claims of Creditors

The last exemption Mr. Soori invokes is RIGL § 27-4-12. The Trustee argues that this statutory exemption is unavailing to Mr. Soori because it does not permit him as the Annuity Owner and Annuitant to shield the Fidelity Account and its proceeds from the claims of his creditors. In turn, Mr. Soori asserts that the exemption applies because he is a "beneficiary" under Nebraska's UTMA, and believes that the Trustee's post-petition actions improperly changed his designation from "beneficiary" to the Annuity Owner. Mr. Soori misunderstands Nebraska's UTMA and its application to the present case. Quite simply, his argument fails to account for the consequences of attaining the age of majority years before he filed bankruptcy.

*1.   Operation of the Nebraska UTMA*

Nebraska's UTMA applies to transfers made after July 15, 1992, where, "at the time of the transfer the transferor, the minor, or the custodian is a resident of [Nebraska] or the custodial property is located in [Nebraska,]" and

> [t]he instrument by which the transfer purports to have been made uses in substance the designation as custodian . . . under the Uniform Transfers to Minors Act of any other state, and the application of the Nebraska Uniform Transfers to Minors Act is necessary to validate the transfer.

Neb. Rev. St. §§ 43-2703, 43-2722(2).

Custodial property is created and transferred "whenever . . . [t]he ownership . . . of a[n] . . . annuity contract is . . . [r]egistered with the issuer in the name of the transferor . . . followed in substance by the words: as custodian for . . . (name of minor) under the Nebraska Uniform Transfers to Minors Act . . . ." *Id*. § 43-2710(1)(c)(i). This creates a single custodianship between the designated custodian and minor and the custodian holds the custodial property solely for the minor's benefit. *See id*. § 43-2711. The transfer is "irrevocable, and the custodial property is indefeasibly vested in the minor . . . ." *Id*. § 43-2712(2). *See Pepmeyer*, 275 B.R. at 544 (explaining UTMA's purpose "to facilitate the easy inter-vivos transfers of assets to minors"); *Dally v. Bank One, Chicago, N.A. (In re Dally)*, 202 B.R. 724, 727-28 (Bankr. N.D. Ill. 1996) (same). Upon the minor's attainment of the age of majority, the custodianship terminates, and the custodian must transfer any custodial property to the minor. *See* Neb. Rev. St. § 43-2721.

The parties agree that Mr. Soori's father opened the Fidelity Account and purchased the Annuity in a custodial capacity under Nebraska's UTMA for Mr. Soori when he was a minor. The transaction irrevocably vested ownership of the Annuity in Mr. Soori while he was a minor.[13] Under Nebraska's UTMA, once Mr. Soori reached the age of 19 his status as a "minor beneficiary" automatically terminated. *See* Neb. Rev. St. § 43-2721(2). Consequently, Mr. Soori gained an immediate possessory interest in the Fidelity Account with the concomitant legal right to complete control over the Annuity under the Annuity Contract. In short, on that date there was no custodian holding legal title for his benefit, he was no longer a minor beneficiary under

---

[13] Although Mr. Soori's father completed the Application "as custodian" for Mr. Soori, the omission of the magic words "under Nebraska Uniform Transfers to Minors Act" does not negate the validity of the inter-vivos gift under the statute. *See Pepmeyer*, 275 B.R. at 544; *Miller*, 80 A.3d at 50 (holding ordinary meaning of "in substance" does not require verbatim recitation of statute's suggested language). Based on the Application, there is no doubt that Mr. Soori's father had the donative intent to purchase the Annuity and establish the Fidelity Account under Nebraska's UTMA for his son's benefit; he named himself "as custodian" for his minor son, checked the "UGMA/UTMA" box for contract type, and used Mr. Soori's social security number for the Owner, Annuitant, and Beneficiary (Mr. Soori's probate estate).

Nebraska's UTMA, and the Annuity Contract's express terms exclusively governed his interest in the Annuity's proceeds.

### 2.   The Annuity Contract

The interpretation of Mr. Soori's Annuity Contact is a matter of law. *Renter v. Siedenburg*, 739 N.W.2d 216, 223 (Neb. Ct. App. 2007). *See also Quillen v. Macera*, 160 A.3d 1006, 1011 (R.I. 2017) (stating that "[c]hanging a beneficiary designation in an annuity policy is a matter of contract"). Nebraska law provides that, "[w]hen the terms of a contract are clear, a court may not resort to rules of construction." *Renter*, 739 N.W.2d at 223. Terms are "accorded their plain and ordinary meaning" and the Court will ascertain the parties' intention from "the plain language of the contract." *Id.*

The definitional section of the Annuity Contract defines the owners of the Annuity as "[t]he person(s) who has (have) the ownership rights and privileges of the [Annuity] Contract." (Annuity Contract, Doc. #108-2, at 11). "The [o]wner(s) is (are) named on the application and may be changed as provided in" the Annuity Contract. *Id.* It defines annuitant as "[t]he person on whose life monthly annuity payments depend." *Id.* at 10. Finally, and most significant to the Court's analysis, it defines beneficiary as "[t]he person or persons who receive the proceeds in the event of the death of all of the [o]wners or the [a]nnuitant." *Id.* In turn, this last definition identifies who the persons or entities to whom the Annuity Contract's "Protection of Proceeds" provision applies. This provision states that "[p]ayments under [the Annuity] Contract may not be assigned by any [b]eneficiary prior to the time they are due . . . . [and] [t]o the extent allowed by law, payments are not subject to the claims of creditors or to legal process." *Id.* at 12. Clearly, the provision restricts the rights of the Annuity Beneficiary, Mr. Soori's probate estate. Contrary

to his argument, the "Protection of Proceeds" provision has never restricted Mr. Soori's rights because he has always been the Owner and Annuitant under the Annuity Contract.

Because the custodial property—the Fidelity Account, the Annuity, and the Annuity Contract—were indefeasibly vested in Mr. Soori and only managed by his custodian father until Mr. Soori's 19th birthday, the Trustee's post-petition notification to Fidelity of Mr. Soori's adulthood was entirely appropriate. Nor was the reissuance of the Annuity Contract to reflect Mr. Soori's exclusive ownership of the Annuity improper. Fidelity's actions did not constitute an actual or invalid change of ownership under the Annuity Contract as Mr. Soori asserts. Further, in no way did reissuance of the contract result in Mr. Soori's removal as a previously designated minor beneficiary under Nebraska's UTMA because the custodianship was only effective while he remained a minor. Hence, the actions of the Trustee and Fidelity were administrative acts in compliance with Nebraska's UTMA requirements and in furtherance of its purpose.

### 3.  Application of RIGL § 27-4-12

Having determined that Mr. Soori's designation as a minor beneficiary during the custodianship does not render him the Beneficiary under the Annuity Contract, the Court must now determine whether RIGL § 27-4-12 protects the Annuity proceeds from the claims of Mr. Soori's creditors. This statute states:

> Any policy of life or endowment insurance or any annuity contract may provide that the proceeds of or payments under it shall not be subject to transfer, anticipation, or commutation or encumbrance by any beneficiary other than the insured or the purchaser of the annuity, and shall not be subject to the claims of a creditor of any beneficiary or any legal process against the beneficiary.

RIGL § 27-4-12.

This anti-alienation statute appears to be the only specific Rhode Island exemption that applies to nonqualified annuities such as Mr. Soori's Annuity. *See* RIGL § 9-26-4(11) and (12)

17

(exempting certain qualified *retirement* annuities from claims of creditors). Although there is no

Rhode Island case law or legislative commentary addressing RIGL § 27-4-12's application, the

statute's plain and unambiguous language shows the legislature's intent to protect annuity

proceeds and payments from improvident actions by beneficiaries and out of the reach of their

creditors. Courts addressing similar "anti-alienation" exemption statutes enacted in other states

share this view. *See May*, 478 B.R. at 435 (applying Colo. Rev. Stat. § 10-7-106); *Olson*, 424

B.R. at 774-75 (applying Mich. Comp. Laws § 500.4054 and the use of "insured" in the statute to

include annuity owner).

Placing such exemption statutes in their historical context is helpful. During the 1920s

and 1930s, "legislatures across the country began passing two types of statutes to protect life

insurance proceeds." *May*, 478 B.R. at 436. These statutes exempted the "proceeds from the

claims of creditors of the purchaser of the insurance (usually the insured) . . . and safeguard[ed]

policy] proceeds against claims of creditors of the beneficiaries." *Id.* (citing *Sterling Pierson,*

*Recent Legislation Preserving Insurance Proceeds for Beneficiaries*, 16 A.B.A. J. 22, 23

(1930)). Considering this background and the General Assembly's enactment of RIGL § 27-4-12

in 1931, it is likely that it was initially intended to "protect life insurance proceeds paid by an

insurance company to a beneficiary, in installments or through an annuity, from the creditors of

that beneficiary." *May*, 478 B.R. at 437 (discussing legislative policy of similar Colorado

exemption statute enacted in 1925). RIGL § 27-4-12's use of "any annuity contract" expands its

application to non-insurance related annuities, such as the deferred variable Annuity at issue

here.

The Court's review of case law interpreting similar state exemption statutes supports its

conclusion that the protections provided by such statutes are limited to beneficiaries (whose

rights are restricted under the annuity contract) and does not extend to the annuity owner or

annuitant. Two cases in particular are most persuasive.

In *In re May*, the bankruptcy court analyzed the application of Colo. Rev. Stat. § 10-7-

106 ("Colorado Statute") to the debtor-wife's non-insurance-related annuity. *May*, 478 B.R. at

435. The Colorado Statute provides:

> **Whenever, under the terms of any annuity or policy of life
> insurance,** . . . issued by any insurance company, domestic or
> foreign, lawfully doing business in this state, **the proceeds are
> retained by such company** at maturity or otherwise, **no person,
> other than the insured,** entitled to any part of such proceeds or any
> installment of interest due or to become due thereon **shall be
> permitted to** commute, anticipate, encumber, alienate, or **assign
> the same,** or any part thereof, if such permission is expressly
> withheld by the terms of such policy or supplemental
> agreement; **and,** if such policy or supplemental agreement so
> provides, **no payments of interest or of principal shall be in any
> way subject to such person's debts,** contracts, or engagements nor
> to any judicial processes to levy upon or attach the same for payment
> thereof.

*Id*. (citing Colo. Rev. Stat. § 10-7-106) (emphasis in the original). Like its Rhode Island

counterpart, the Colorado statute "prohibits a beneficiary other than an 'insured' from assigning

an interest in an annuity or life insurance policy . . . . [and further states] that the proceeds of

either an annuity or life insurance policy shall not be subject to 'such person's debts.'" *Id*.

Reducing the statute to its core, the *May* court identified three basic requirements for the statute

to apply: "(1) the entity issuing the annuity or insurance policy must retain the proceeds; (2) the

annuity or policy must have specific language restraining the alienation of proceeds by persons;

and (3) the person claiming its protection must not be 'the insured.'" *Id*. at 438.

Concluding that the third requirement was not met, the bankruptcy court emphasized that

the statute gives the insured "alienation and assignment rights, but protects only those

beneficiaries who have no such control over proceeds." *Id*. at 440. Like an insured, an annuity

owner has certain rights affecting annuity proceeds, including "the power to assign the annuity, surrender the annuity, and designate beneficiaries." *Id*. at 441. As a result, equating the debtor-wife who owned the annuity with the "insured" acknowledged those rights while protecting powerless beneficiaries from their own financially irresponsible actions and from their creditors. *Id* at 440. The bankruptcy court's interpretation of the term "insured" as analogous to an annuity owner is harmonious with the exemption's historical policy goals in the context of a non-insurance-related annuity. *Id.* at 440.

The bankruptcy court in *In re Olson* made the same determination when addressing a similar Michigan exemption statute, Mich. Comp. Laws § 500.4054 ("Michigan Statute"). *See Olson*, 424 B.R. at 771. The *Olson* court held that the Michigan Statute did not exempt a debtor owner's partial interest in an annuity. *Id*. The Michigan Statute states:

> (1) Any authorized life insurer shall have power to hold the proceeds of any life or endowment insurance or annuity contract issued by it (a) upon such terms and restrictions as to revocation by the insured and control by beneficiaries; (b) **with such exemptions from legal process and the claims of creditors of beneficiaries other than the insured;** and (c) upon such other terms and conditions, irrespective of the time and manner of payment of said proceeds, as shall have been agreed to in writing by such insurer and the insured or beneficiary.
>
> . . .
>
> (3) Any life or endowment insurance or annuity contract issued by a domestic, foreign or alien insurer may provide that the proceeds thereof or payments thereunder shall **not be subject to the claims of creditors of any beneficiary other than the insured or any legal process against any beneficiary other than the insured;** and if the said contract so provides, the benefits accruing thereunder to such beneficiary other than the insured shall not be transferable nor subject to commutation or encumbrance, or to process.

*Id*. at 774 (citing Mich. Comp. Laws § 500.4054) (emphasis in original).

The *Olson* court explained that "[a] straightforward reading of this statute discloses that it does not protect the *insured* against claims his or her creditors make on the proceeds of the insurance or annuity fund." *Id*. at 774 (emphasis in original). Rather, it "protect[s] the *insurer* from claims that *beneficiaries'* creditors make on the proceeds of the fund," equating the debtor with the "insured" under the statute. *Id*. (emphasis in original).

Unfortunately for Mr. Soori, the bottom line is that RIGL § 27-4-12 does not exempt the Fidelity Account and the Annuity from the bankruptcy estate and his creditors. The Court agrees with the *May* and *Olson* courts' reasoning, and concludes that RIGL § 27-4-12's use of the term "insured" also encompasses an annuity owner.  On the Filing Date, Mr. Soori was the adult Owner under the Annuity Contract with the contractual rights to assign the Annuity, designate beneficiaries under the Annuity, and surrender the Annuity and receive the liquidation proceeds. Because his probate estate is the named Beneficiary under the Annuity Contract, he may not avail himself of the benefits the Annuity Contract's Protection of Proceeds provision and RIGL § 27-4-12's protection afforded the Annuity Beneficiary. The Court's conclusion effectuates the terms of the Annuity Contract and the statute's limited application to named annuity beneficiaries. By excluding the "insured or the purchaser of the annuity" from the category of persons within the scope of an annuity anti-alienation provision, RIGL § 27-4-12 acknowledges the contractual rights of an annuity's owner, while limiting its protection of the annuity proceeds to the named annuity beneficiaries who, as non-owners, lack the power to exercise dominion and control over an annuity policy.

## VII.    Conclusion

The Trustee's objection to the exemption of the Fidelity Account and the Annuity within

it under RIGL §§ 27-4-11, 27-18-24, and 27-4-12 is SUSTAINED. The Trustee's limited

objection to the exemption of the Fidelity Account under RIGL § 9-26-4(16) is SUSTAINED to

the extent that the exempted amount exceeds $6,400.


Date: March 26, 2019                                    By the Court,

                                                        Diane Finkle
                                                        _____

                                                        Diane Finkle
                                                        U.S. Bankruptcy Judge